## Richmond

### ALLEGHANY ENTERPRISES, INC. V. BOARD OF ZONING APPEALS OF THE CITY OF COVINGTON, ET AL.

June 11, 1976.

Record No. 750538.

Present, All the Justices.

*Michael McH. Collins; William T. Wilson* (*Collins, Wilson, Collins & Singleton*, on brief), for appellant.

*William E. Carson; John B. Curry, II, City Attorney* (*Kostel, Watson, Carson & Snyder*, on brief), for appellees.

COCHRAN, J., delivered the opinion of the court.

In this appeal we review the ruling of the trial court which affirmed the denial by the Board of Zoning Appeals of the City of Covington

of an application by Alleghany Enterprises, Inc., (Alleghany) for a variance from the terms of the City's zoning ordinance.

Alleghany, a corporation whose capital stock was owned in equal shares by Earl R. Bailey and P. W. Byer, Jr., had bought, sold and leased real estate in the Covington area for approximately 20 years. In 1972, Alleghany purchased a lot, zoned for commercial use, fronting 150 feet on the north side of Madison Avenue (U. S. Routes 60 and 220), a four-lane, divided thoroughfare in the City. Covington Motor Company, Inc., whose capital stock was also owned in equal shares by Bailey and Byer, opened and operated on the lot a used car and camper sales business under the name of Camperland Sales. Adjoining this lot on the east is a lot, zoned for commercial use, extending 150 feet to the eastern corporate limits of the City, on which is located a drive-in market.

In 1973, Alleghany purchased a parcel of 1.25 acres adjoining the Camperland Sales lot on the west, fronting 450 feet on the north side of Madison Avenue and zoned R-1, the most highly restricted residential classification under the City's zoning ordinance. The next property on the west, separated from this parcel by a side street, had recently been rezoned from R-1 to a commercial classification, subject to restrictions under which the landowner constructed an office building of the architectural design of a dwelling. Across Madison Avenue from the 1.25 acre parcel is Fairlawn Subdivision, zoned R-1, and north and west of the property is Altamont Subdivision, also zoned R-1. Prior to Alleghany's purchase of the parcel, the owner had filled in a 40-foot strip on its eastern end and brought this strip up to the grade of the street and the lot of Camperland Sales. After Alleghany acquired the parcel Camperland Sales filled in additional portions of the property and expanded its operations by parking and displaying for sale thereon campers and used cars.

Alleghany, charged with a violation of the zoning ordinance, applied to City Council for rezoning of the 1.25 acre parcel to C-1 (Local Business), a commercial classification which would permit use of the property for the operation of Camperland Sales. Although the Planning Commission unanimously recommended the rezoning, City Council, after a public hearing, denied the application by a 3-2 vote, all members voting. Alleghany then applied for a certificate of occupancy and, after this was denied by the Zoning Administrator, appealed to the Board of Zoning Appeals for a variance to permit the parking of vehicles on the parcel. After conducting public hearings on February 27, 1974, and July 2, 1974, the Board denied the application by a 3-2 vote, all members voting.

Upon petition of Alleghany, the trial court allowed a writ of certiorari pursuant to Code § 15.1-497[1] to review the decision of the Board. Seven landowners, residents in the area of the subject parcel, who were granted leave to intervene in the proceedings, filed an answer supporting the Board's decision. On motion of Alleghany and the intervenors the City of Covington was made a party defendant. Copies of the papers acted upon by the Board and of the minutes of Board meetings reporting the relevant proceedings were filed in the trial court. Over a period of two days the court heard the testimony of numerous witnesses, received in evidence various photographs, other exhibits, and the deposition of one witness, and viewed the land in controversy and the surrounding area. In an opinion dated January 8, 1975, the court stated its finding that Alleghany had not "borne the heavy burden of proving that the board in exercising its discretion is plainly wrong." The court further found that, although Code § 15.1-495[2] provides for variances in cases of unnecessary hard-

[1] Code § 15.1-497 (Repl. Vol. 1973) provides in pertinent part:
"**Certiorari to review decision of board.**—Any person or persons jointly or severally aggrieved by any decision of the board of zoning appeals, or any taxpayer or any officer, department, board or bureau of the county or municipality, may present to the circuit or corporation court of the county or city a petition specifying the grounds on which aggrieved within thirty days after the filing of the decision in the office of the board.
"Upon the presentation of such petition, the court shall allow a writ of certiorari to review the decision of the board of zoning appeals . . . .

\* \* \*

"If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a commissioner to take such evidence as it may direct and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review."

\* \* \*

[2] Code § 15.1-495 (Repl. Vol. 1973) provides in pertinent part:
"**Powers and duties of board of zoning appeals.**—Boards of zoning appeals shall have the following powers and duties:

\* \* \*

"(b) To authorize upon appeal in specific cases such variance . . . as will not be contrary to the public interest, when, owing to special conditions a literal enforcement . . . will result in unnecessary hardship; provided that the spirit of the ordinance shall be observed and substantial justice done, as follows:
"When a property owner can show that his property was acquired in good faith and where by reason of the exceptional narrowness, shallowness, size or shape of a specific piece of property at the time of the effective date of the ordinance, or where by reason of exceptional topographic conditions or other extraordinary situation or condition of such piece of property, or of the use or development of property immediately adjacent thereto, the strict application of the terms of the ordi-

ship, if a hardship existed in the present case it was self-imposed. Finally, the court did "not find that the board acted contrary to law, abused its discretion or violated the purpose and intent of the zoning ordinance." Accordingly, by final order entered January 18, 1975, the decision of the Board was affirmed.

A proceeding before the trial court under Code § 15.1-497 is not a trial *de novo*. There is a presumption that the Board's decision was correct and the burden is on the appellant to overcome this presumption. *Board of Zoning Appeals v. Combs*, 200 Va. 471, 476-77, 106 S.E.2d 755, 759 (1959). The court may not disturb the decision of a board of zoning appeals unless the board has applied erroneous principles of law or, where the board's discretion is involved, unless the evidence proves to the satisfaction of the court that the decision is plainly wrong and in violation of the purpose and intent of the zoning ordinance. *Board of Zoning Appeals of Alexandria v. Fowler*, 201 Va. 942, 948, 114 S.E.2d 753, 757-58 (1960).

The trial court, as authorized by the statute, took extensive evidence, but found that the evidence and arguments presented at trial were essentially the same as that presented before the Board at its two hearings. In its opinion the court stated that it had applied the relevant principles of law to the evidence, "especially that which the board considered", and to the view taken by the court.

Alleghany, relying principally on recent zoning cases, including *City of Fairfax v. Swart*, 216 Va. 170, 217 S.E.2d 803 (1975), and *Arlington County v. God*, 216 Va. 163, 217 S.E.2d 801 (1975), both decided after the final order was entered in the present case, contends that the findings of the trial court were contrary to the law and the evidence. We do not agree.

Alleghany adduced evidence, through the testimony of expert and lay witnesses, to show that it was not feasible to use the subject property for residential purposes because of the topography of the land

nance would effectively prohibit or unreasonably restrict the use of the property or where the board is satisfied, upon the evidence heard by it, that the granting of such variance will alleviate a clearly demonstrable hardship approaching confiscation, as distinguished from a special privilege or convenience sought by the applicant, provided that all variances shall be in harmony with the intended spirit and purpose of the ordinance.

"(1) That the strict application of the ordinance would produce undue hardship.

"(2) That such hardship is not shared generally by other properties in the same zoning district and the same vicinity.

"(3) That the authorization of such variance will not be of substantial detriment to adjacent property and that the character of the district will not be changed by the granting of the variance."

and the exorbitant cost of site preparation; that adjacent property was being used for commercial purposes; that this parcel was virtually worthless unless used for commercial purposes; and that the granting of a variance to permit its use, subject to certain specified beautification requirements, as a motor sales lot would not have any detrimental effect on nearby residential properties. The Board received petitions signed by more than fifty residents in the Fairlawn and Altamont subdivisions supporting the application.

The evidence for those opposing the application consisted of the testimony of several residents of the nearby subdivisions that use of the property for a camper and used car sales lot in close proximity to their homes would be unsightly and would depreciate the value of their properties; that it was not impossible to construct residences on the property; and that its use as an unimproved buffer zone between the Fairlawn and Altamont subdivisions was highly desirable. Petitions signed by more than fifty residents of the subdivisions who opposed the application were filed with the Board.

In *Swart* and *God,* both declaratory judgment proceedings, the trial courts found that the local governing bodies acted arbitrarily and capriciously in refusing to rezone the properties in question. We held, in affirming, that the landowner's evidence in each case was sufficient to overcome the presumed legislative validity of the action, that the governing body failed to produce evidence to show that the denial was reasonable, and that the question, therefore, under principles enunciated in *City of Richmond* v. *Randall,* 215 Va. 506, 211 S.E.2d 56 (1975), was not fairly debatable.

These recent zoning cases, however, have not effected any change in the law applicable to variances, where landowners are required to meet the statutory tests imposed under the provisions of Code § 15.1-495. A variance may be permitted to avoid "unnecessary hardship", provided the landowner establishes, among other things, that his property was acquired in good faith and that strict application of the zoning ordinance would produce "undue hardship".

Bailey testified that he knew, when the 1.25 acre parcel was purchased by Alleghany, that it was zoned R-1; that he had been instrumental in having other residential property rezoned for commercial use to permit the operation of the motor vehicle sales business conducted by Covington Motor Company, Inc., at another location in the city; but that he thought, when he arranged for the purchase of the 1.25 acre parcel, that the displaying and parking of motor vehicles

for sale was permitted in an R-1 zone. Nevertheless, the witness conceded that such use of the property was no different from the use made by the motor company of its commercially zoned land, and the trial court found that Bailey "knew, or should have known from previous dealings, that a sales lot for motor vehicles was prohibited" under the R-1 residential classification.

The evidence adduced by Alleghany tended to show that the residential zoning of the subject parcel was unreasonable and that a commercial zoning would be reasonable. But that is not the question before us. We cannot say as a matter of law that there was no credible evidence on which the Board could justify its denial of the variance. Nor can we say as a matter of law that the ruling of the trial court, based upon the evidence presented to the Board, the evidence taken in the trial court, and the view taken by the trial court, was plainly wrong. The evidence supports the finding of self-inflicted hardship and, under *Board of Zoning Appeals* v. *Combs, supra*, 200 Va. 471, 477-78, 106 S.E.2d 755, 759-60, such hardship, whether deliberately or ignorantly incurred, affords no basis for the granting of a variance.

*Azalea Corp.* v. *City of Richmond*, 201 Va. 636, 112 S.E.2d 862 (1960), relied upon by Alleghany, is distinguishable. There, we reversed the trial court which had affirmed the denial of a variance by a board of zoning appeals. The proceeding before the trial court was a *de novo* hearing upon an agreed statement of facts and evidence heard *ore tenus*. The variance sought by the landowner would have permitted construction of three access driveways across that portion of the landowner's property, zoned for residential use, situated in the City of Richmond, to the larger portion of the tract, lying in Henrico County, on which the landowner planned to erect a shopping center. The landowner's acquisition of the property in good faith was not questioned and was not in issue. We merely held that the evidence established that denial of the variance would unreasonably restrict access to the entire tract, resulting in great detriment to the landowner, with no substantial benefit to the public or to the neighborhood, and that the action of the trial court, therefore, under the provisions of the ordinance as applied to the facts of the case, constituted an unreasonable and arbitrary abuse of discretion. *See also Tidewater Utilities* v. *Norfolk*, 208 Va. 705, 160 S.E.2d 799 (1968), where we held that the Board of Zoning Appeals, on the basis of the evidence before it, was plainly wrong in refusing a variance, and that the trial court, which heard no additional evidence, erred in

affirming the Board's decision. There again, however, it was undisputed that the landowner acquired its property in good faith.

Here, the good faith acquisition of the property by Alleghany was challenged throughout the proceedings. The trial court did not specifically find lack of good faith on the part of the landowner, but, by finding that any hardship was self-inflicted, the court reached the same result, and properly denied the variance.

We hold that there was no error in the judgment of the trial court and it will, therefore, be affirmed.

*Affirmed.*